Matthew E. Draper
**DRAPER & DRAPER LLC**
200 Park Avenue, Suite 1700
New York, NY 10166
Tel: (347) 442-7788
Fax: (505) 490-4590

*Counsel for Serbian Bankruptcy Supervision Agency as Trustee of Železara Smederevo D.O.O. in bankruptcy*

"ŽELEZARA SMEDEREVO" D.O.O.
SMEDEREVO U STEČAJU
Broj: 136
Datum: 25.06.2019.god.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re:

    ŽELEZARA SMEDEREVO D.O.O.,

    Debtor in a Foreign Proceeding.

------------------------------------------------------------x

Chapter 15

Case No. _____

**DECLARATION OF ŽELJKO MIJUŠKOVIĆ**
**IN SUPPORT OF VERIFIED PETITION AND RECOGNITION HEARING**

I, Željko Mijušković, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1. I am a practicing insolvency specialist and bankruptcy administrator located in Serbia. I have held a license to work as a bankruptcy administrator since 2010, from which time I have acted or am still acting in a number of bankruptcy proceedings before competent (Commercial) Bankruptcy courts in the Republic of Serbia.

2. I am familiar with the Bankruptcy Act ('Official Gazette of the Republic of Serbia', No 104/09, 99/2011, 71/2012, 83/2014, 113/2017, 44/2018 and 95/2018) (the "Serbian Bankruptcy Law"). An English translation of the Serbian Bankruptcy Law is attached hereto as **Exhibit A**.

3. Although my native language is Serbian, I speak English, and have elected to submit this declaration in English.

4. I submit this declaration in support of the Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceeding filed contemporaneously herewith.

5. This declaration is comprised of matters that are statements of legal opinion and/or statements of fact. Where the statements are legal opinion, such statements represent my view as a Serbian insolvency practitioner. To the extent the statements are statements of fact, they are statements based upon my personal knowledge or based upon documents and/or information supplied to me by or on behalf of the BSA, the trustee and foreign representative of Železara Smederevo D.O.O. ("ZS" or the "Debtor") and are true to the best of my knowledge, information and belief. I have been appointed by the BSA with Power of Attorney to act on behalf of the BSA as trustee of ZS.

## I. Overview of Serbian Bankruptcy Law

5. In Serbia, corporate insolvency proceedings are overseen by the commercial court where the registered office of the debtor-business is located. The commercial court directs and controls insolvency proceedings from opening to closure. It appoints a judge who, among other matters, rules on the initiation of (preliminary) insolvency proceedings, establishes whether grounds for insolvency exist and appoints or, if necessary, dismisses the bankruptcy trustee. The Court further passes on the final resolution approving distribution of the Debtor's assets.

6. The bankruptcy administrator is appointed to represent the debtor and manage its business, take all necessary actions to protect the debtor's property, and submit regular reports on the course of the proceedings and the state of the bankruptcy estate. In bankruptcy proceedings conducted against majority socially-owned[1] or state-owned legal entities, as well as in cases where

---

[1] Social ownership was the most dominant type of corporate ownership in the former Yugoslavia. The idea of social ownership was to put a strong emphasis on workers of companies. Practically this meant the following: workers were owners (members) of companies and they managed the companies via so called workers' self-management.

2

the debtor's ownership structure changes during the course of the bankruptcy proceedings making it a majority state-owned legal entity, the bankruptcy judge appoints the BSA as bankruptcy administrator. The BSA then grants power of attorney to a restructuring professional to act on behalf of the BSA.

7. The bankruptcy administrator's powers include, but are not limited to: (i) taking all necessary measures to protect the property of the bankruptcy debtor, including the prevention of transfer and sealing or seizure of property where necessary; (ii) preparing an initial balance sheet of the bankruptcy proceedings and a tax balance sheet, and reconciling the opening and closing balance, (iii) notifying, in writing, all creditors known at the time of the opening of the bankruptcy proceedings and providing data to creditors through the course of the case; (iv) submit to the bankruptcy judge the monthly expenses of the bankruptcy proceedings and liabilities of the bankruptcy estate; (v) ascertaining the validity, extent, and priority of claims lodged by creditors, including any security interests; (vi) preparing a distribution of the bankruptcy estate and the final account; (vii) making payments to creditors based on the final distribution scheme; (viii) representing the bankruptcy debtor or the bankruptcy estate in pursuing judicial, administrative and other proceedings; and (ix) filing petitions, applications or other appropriate acts with appropriate bodies of foreign countries as the officially authorized representative of the bankruptcy debtor.

8. The Serbian Bankruptcy Law permits creditors to participate in the process. Shortly after the commencement of a Serbian insolvency case, the Court convenes a meeting of creditors. The first meeting of creditors elects a creditors committee (members may be dismissed at later creditors' meetings). Creditors also may adopt the decision on the bankruptcy of a company at its first meeting if creditors whose claims amount to more than 50 per cent of all claims vote for such

decision. The assembly reviews the reports of the bankruptcy trustee on the course of the proceedings and the state of the bankruptcy estate, together with the reports of the creditors' committee.

9. Upon expiry of the deadline for filing claims, the bankruptcy judge submits all received claims to the bankruptcy administrator. The bankruptcy administrator then determines the grounds, scope and payment rank of the creditors' claims, and compiles the list of all verified (uncontested) and contested claims. The final list of all filed claims is compiled at the investigation hearing. A claim is considered "verified" if it has not been contested by the bankruptcy administrator or any creditor by the time the examination (investigation) hearing was concluded. The bankruptcy judge adopts a final list of claims, based on the list drafted by the bankruptcy administrator as amended at the hearing. The final list includes information about each submitted claim, including contesting parties and the verified or contested amount of each claim. Based on the final list of claims, the bankruptcy judge issues a decision on each claim.

## II. Overview of ZS's Business

10. ZS is a company formed and existing under the laws of Serbia. In 2003, U.S. Steel purchased a century-old steel mill in Smederevo, a city along the Danube River in central Serbia. Although the steel mill was productive and profitable for several years, the global financial crisis soon caused worldwide contraction in the steel market, and U.S. Steel announced plans to close the mill.

11. In January 2012, the Republic of Serbia purchased the steel mill and continued to operate it. The Republic of Serbia is ZS's sole shareholder. In late 2015, the Chinese industrial conglomerate HeSteel Group expressed interest in acquiring ZS. By April 2016, terms for an acquisition were received from HeSteel, and after significant negotiations, on April 18, 2016,

HeSteel and ZS entered into a sale and purchase agreement for the acquisition of ZS's primary assets. The sale transaction closed on June 30, 2016.

### III. Events Leading Up To, And Current State Of, The Serbian Insolvency Proceeding

#### A. ZS Contracts A Third-Party Manager

12. In 2014, the Republic of Serbia announced plans to privatize ZS. Part of the Republic of Serbia's strategy was to retain a professional management company to operate and improve ZS's financial outlook prior to its sale. In 2015, Serbia solicited bids from several companies for interim management and ultimately awarded the contract to a Serbian company, HPK Management D.O.O. ("HPK Management"). HPK Management is a subsidiary of a Dutch company HPV Engineering B.V. ("HPK Engineering" and, together with HPK Management, "HPK").

13. HPK Management's retention was governed by a Management and Consultancy Services Agreement (the "MSA"). Pursuant to the MSA, HPK Management would select the Chief Executive Officer and direct ZS's day to day operations. The Republic of Serbia was entitled to appoint an Officer for Government Relations ("OFGR") employed by ZS to monitor the CEO and ensure that Serbian interests were served. Together, the CEO and the OFGR were the sole directors of ZS.

14. Sitting above both the CEO and the OFGR was a five-member Supervisory Board. HPK Management appointed two members of the Supervisory Board, and the Republic of Serbia appointed the remaining three. In the limited circumstances where the CEO was required to obtain the co-signature of the OFGR, but the OFGR failed to sign, the CEO was empowered to call a meeting of the Supervisory Board, who could act for the OFGR.

15. HPK Management was permitted to direct ZS to engage in business arrangements with HPK Management's affiliates, including entering into contracts for the supply of raw material

and the distribution of the company's steel products. HPK Management was also paid a monthly management fee, which also had milestone-based enhancements. The MSA further provided that HPK Management could earn a bonus upon the successful privatization of the company – specifically a "Privatization Bonus" equal to "30% of ZS's acquisition price but in no event lower than USD 10,000,000. By its terms, the MSA terminated upon successful privatization.

### B.     ZS and HPK Management Dispute and Subsequent Arbitration

16.     In furtherance of the imminent sale of the company to HeSteel, on April 1, 2016, ZS issued a termination notice to HPK Management pursuant to Section 8.4 of the MSA. A dispute then arose between the ZS and HPK Management concerning whether HPK Management had complied with its obligations under the MSA .ZS eventually issued a second termination notice on June 25, 2016, asserting that (i) HPK Management had breached the MSA, (ii) was being terminated for immediately cause, and (iii) was therefore not entitled to any Privatization Bonus.

17.     HPK disputed the validity of the termination and initiated an arbitration under the MSA, which provided for disputes to be "referred to and finally resolved by arbitration under the London Court of International Arbitration Rules." MSA § 17.2.HPK named both ZS and the Republic of Serbia as respondents.  The arbitration was held in London, England. After six rounds of substantive briefing, the presentation of over 300 evidentiary exhibits, six witness statements, and three expert reports, the Tribunal held a five-day evidentiary hearing from October 30, 2017 through November 3, 2017. On May 11, 2018, the Tribunal rendered a Final Award (the "Final Award"). A copy of the Final Award is attached hereto as **Exhibit B**. The Tribunal found that ZS was liable to HPK Management for approximately US$12.4 million, which included the minimum payment of the Privatization Bonus and certain management fees. The Tribunal denied HPK's request for additional damages against ZS and found fully in favor of Serbia.

C. **Current State of the Serbian Insolvency Case**

19. On November 20, 2018, the Republic of Serbia, Ministry of Economy, filed an application seeking the commencement of bankruptcy proceedings with regard to ZS in the Commercial Court in Požarevac, Serbia (the "Serbian Court").

20. On January 31, 2019, the Serbian Court issued an order (the "Commencement Order") commencing a bankruptcy proceeding against ZS under the Serbian Bankruptcy Law (the "Serbian Insolvency Proceedings"). A copy of the Commencement Order is attached hereto as **Exhibit C**. In the Commencement Order, the Court appointed the BSA to serve as the trustee for ZS. Thereafter, on February 8, 2019, in accordance with Serbian Bankruptcy Law, the BSA designated me to act as its authorized representative, with power of attorney, in respect of the Serbian Insolvency Proceeding. A copy of the Power of Attorney is attached hereto as **Exhibit D**. The Serbian Insolvency Proceeding is pending.

21. By virtue of the Commencement Order, the BSA is authorized to, among other things, file proceedings in furtherance of the Serbian Insolvency Case in any relevant jurisdiction. Accordingly, the BSA is authorized to act as the "foreign representative" of ZS in this chapter 15 case.

22. As set forth in the Commencement Order, notice of the commencement of ZS's insolvency case was published in the "Official Gazette" of the Republic of Serbia on February 08, 2019. The Commencement Order set the claims bar date as 30 days after the date of publication, March 10, 2019.

23. On March 19, 2019, a meeting of ZS's creditors was held at the Commercial Court in Pozarevac. On April 8, 2019, the Court held an Examination Hearing.

24. As of January 31, 2019, the BSA has received claims from 36 claimants for a total amount of approximately 60 billion Serbian Dinars ("RSD") of claims.

25. As of January 31, 2019, the BSA holds 50 million RSD on deposit in the Komercijalna banka ad Beograd for the benefit of ZS's creditors. The above amount does not include the value of tangible and intangible assets, which will be subject to formal valuation and sale at a later stage. Cash amounts received thereupon shall be included in ZS' bankruptcy estate for distribution to its creditors.

26. The BSA expects to be able to pay creditors their pro rata share of such assets less the costs of administration.

### D. Pending Litigation In The United States District Court For The District of Columbia

27. On July 30, 2018, HPK Management and HPK Engineering filed a Petition to Confirm Arbitration Award (the "Arbitration Petition") against the Republic of Serbia and ZS before the United States District Court for the District of Columbia (*HPK Management D.O.O. et al. v. Republic Of Serbia et al.*, 1:18-cv-01773-RDM) ("Enforcement Action"). A copy of the Arbitration Petition is attached hereto as **Exhibit E**. On January 10, 2019, Petitioners in the Enforcement Action amended their petition to reflect assignment of HPK Management's claims to HPK Engineering. A copy of the Amended Arbitration Petition is attached hereto as **Exhibit F**.

28. The Arbitration Petition was commenced in the United States notwithstanding that (i) ZS is a Serbian company with no assets in, creditors in, or other ties at all to the United States, (ii) HPK Management is a Serbian Company with few, if any, ties to the United States, and (iii) HPK Engineering is a Dutch company with few, if any ties to the United States. ZS opposes the Petition on the grounds that the district court lacks personal jurisdiction over ZS.[2]

---

[2] On April 3, 2019, HPK voluntarily dismissed the Amended Arbitration Petition against the Republic of Serbia.

29.     The Arbitration Petition was filed before ZS was placed into bankruptcy in Serbia. On March 27, 2019, ZS moved the D.C. District Court to stay proceedings so that SBA could seek chapter 15 recognition for the Serbian Bankruptcy Proceeding. No party to the litigation submitted any opposition to the motion and, on April 3, 2019, the Court ordered that the "case is stayed in light of the bankruptcy proceedings against Zelezara Smederevo." April 3, 2019 Minute Order. The Court directed the parties to update it on the bankruptcy proceedings by August 7, 2019. *Id.* Now that ZS is the debtor in a Serbian proceeding, any claims that HPK may have, whether deriving from the Final Award or otherwise, are not properly litigated in the United States. Indeed, to the extent that ZS has any assets in the United States, which aside from certain retainers held in its US counsel's client trust account, it does not, those assets should be turned over to the BSA, and distributed through the Serbian Insolvency Proceeding.

30.     ZS filed this Chapter 15 case in order to stay litigation regarding claims against an insolvency Serbian Company and facilitate the adjudication and payment of those claims in the foreign main proceeding, presently pending in Serbia.

## IV.    Verified Petition

31.     Contemporaneously with the filing of this Declaration, the BSA filed a Verified Petition under Chapter 15 for Recognition of a Foreign Main Proceeding (the "Verified Petition"). I have reviewed the Verified Petition and believe the factual allegations set forth therein are true and correct, to the best of my knowledge information and belief.

## V.    Recognition as a Foreign Main Proceeding

32.     The Serbian Insolvency Proceeding is currently the only insolvency proceeding with respect to ZS in the world of which I am aware. At this time, the BSA does not intend to commence any additional foreign insolvency proceedings. This statement is made in satisfaction of the requirements of section 1515(c) of title 11 of the United States Code (the "Bankruptcy

Code"), and will be timely supplemented if additional foreign ancillary proceedings are commenced.

33. I believe that the Serbian Insolvency Proceeding is a "foreign main proceeding" as I have been advised that term is defined in sections 101(23) and 1502(4) of the Bankruptcy Code because, among other things, ZS's registered office and headquarters are located in Serbia. Additionally, all of ZS's corporate decisions were made in Serbia, and substantially all of ZS's creditors are located in Serbia. Serbia is therefore presumed to be the center of main interests of the Bank as dictated by section 1516(c) of the Bankruptcy Code.

34. I believe that ZS is eligible to be a "debtor" under section 109 of the Bankruptcy Code, because, among other things, ZS has property located in the State of New York. Specifically, Draper and Draper LLC maintains a non-interest bearing client trust bank account at Wells Fargo Bank in New York City, New York, to hold a certain unapplied retainer fee received from ZS for legal services to be performed in respect of this chapter 15 proceeding. Accordingly, I have been informed that ZS is eligible to be a debtor under section 109 of Bankruptcy Code and that venue is proper in this Court under applicable law. *See, e.g., In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 373-74 (Bankr. S.D.N.Y. 2014); see also 28 U.S.C. § 1410.

35. As trustee and foreign representative of ZS, the BSA has directed our United States counsel, including Draper & Draper LLC to: (i) submit this chapter 15 petition for ZS; (ii) seek relief to prohibit parties from continuing, commencing or initiating litigation against ZS so as to ensure that adjudication of claims is conducted in Serbia, and (iii) seek such additional assistance as we may request from time to time to facilitate the Serbian Insolvency Proceeding and the orderly administration ZS's affairs, including, without limitation, implementing and/or effectuating the Commencement Order.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____  06/25/2019
Željko Mijušković            Date
                             MM/DD/YYYY